FILED

2020 May-08  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

Q     IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **DYNO NOBEL INC.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:19-cv-01782-ACA** |
| | ] | |
| **MS & R EQUIPMENT CO., INC., et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff Dyno Nobel, Inc.'s motion to dismiss three of the claims made in the amended counterclaim filed by Defendants MS & R Equipment, Co. Inc." ("MSR") and Cedar Lake Mining, Inc. ("Cedar Lake").  (Doc. 25).

Dyno Nobel filed its complaint in diversity against MSR and Cedar Lake, alleging that they failed to pay for goods they had purchased from Dyno Nobel. (Doc. 1-1 at 2–7; Doc. 1-1 at 3).  MSR and Cedar Lake then filed a counterclaim (doc. 7), which they have since amended (doc. 24).  In the amended counterclaim, MSR and Cedar Lake assert against Dyno Nobel claims for (1) breach of contract ("Count One"); (2) violation of the Federal Surface Mining Control and Reclamation Act ("FSMCRA"), 30 U.S.C. § 1270(f) ("Count Two"); (3) violation of the Alabama Surface Mining Control and Reclamation Act ("ASMCRA"), Ala. Code § 9-16-

95(f) ("Count Three"); and (4) trespass to real property ("Count Four") (Doc. 24 at 6–8).

The court **GRANTS** the motion to dismiss.  The court **WILL DISMISS** Count One of the amended counterclaim **WITH PREJUDICE** because MSR and Cedar Lakes do not allege that Dyno Nobel failed to perform an obligation set out in the contract, instead alleging only that it performed its obligations badly.  The court **WILL DISMISS** Counts Two and Three **WITHOUT PREJUDICE** because MSR and Cedar Lakes do not allege that they satisfied the condition precedent to filing suit under the FSMCRA or the ASMCRA.

## I.      BACKGROUND

At this stage, the court must accept as true the factual allegations in the challenged pleading and construe them in the light most favorable to the non-movant.  *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider exhibits attached to the pleading.  *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

In their amended counterclaim, MSR and Cedar Lake allege that they had a business relationship with a company that provided "explosive products and services" at their mines "in accordance with certain longstanding operating procedures and industry standards."  (Doc. 24 at 2 ¶ 6).  After Dyno Nobel acquired that company, it entered a letter agreement with MSR and Cedar Lakes (*id.* at 2 ¶ 8),

under which Dyno Nobel agreed to provide discounts on certain services and to continue offering other services at the same price for three years.  (Doc. 24-1 at 1).  The letter also stated: "The other valued employees of [the previous company] will continue to provide the same support and interaction with your operation as before." (*Id.*).

Throughout 2019, at several different mines, Dyno Nobel failed to properly assess the environmental conditions at a mine pit and used "improper blasting hole patterns, blasting shot sequencing, powder factors, and blasting products and accessories."  (Doc. 24 at 3–5 ¶¶ 9, 11, 13–14).  These practices caused Dyno Nobel to blast through coal seams, which increased costs and reduced productivity.  (*Id.* at 3–5 ¶¶ 10, 12, 15).  In addition, Dyno Nobel dumped explosive emulsion containing ammonium and nitrates mixed with diesel fuel on an open spoil of property at another mine, resulting in contamination, and although MSR and Cedar Lakes notified Dyno Nobel of the need for clean-up, it did nothing.  (*Id.* at 4 ¶ 13).

## II.   DISCUSSION

Dyno Nobel seeks to dismiss Counts One, Two, and Three of MSR and Cedar Lakes' amended counterclaim for failure to state a claim.

"To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'"  *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quotation marks omitted).

> 1.  Count One (Breach of Contract)

In Count One, MSR and Cedar Lakes assert that Dyno Nobel breached the letter agreement by dumping explosive emulsion on an open spoil of their property and by failing to provide explosive products and services "in accordance with historic operational procedures and industry standards."  (Doc. 24 at 6 ¶¶ 18–19).

To prevail on a breach of contract claim under Alabama law, the plaintiff must establish (1) the existence of a valid contract; (2) the plaintiff's own performance under the contract; (3) the defendant's nonperformance; and (4) that the breach of the contract caused damages.  *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).

The parties agree that the letter agreement constituted a contract, but they disagree about whether Dyno Nobel's conduct was a breach of that contract.  Dyno Nobel contends that the contract was only for reduced prices on goods and services, and that there is no allegation that they charged different prices than promised, so a purported failure to provide those goods and services "in accordance with historic

operational procedures and industry standards" is not a breach of the contract.  (Doc. 25 at 4–5).  According to Dyno Nobel, at best this is a claim for breach of an implied warranty of workmanship, which MSR and Cedar Lakes did not assert in their amended counterclaim.  (Doc. 29 at 4–5).  MSR and Cedar Lakes respond that (1) the contract provides that Dyno Nobel will provide the goods and services the same way that the predecessor company did, and (2) a failure to provide goods and services in a commercially reasonable manner is a breach of contract.  (Doc. 28 at 3).

The court agrees with Dyno Nobel.  Alabama law does not make performing in a commercially reasonable way an element of a claim for breach of contract; a failure to perform reasonably is, instead, an element of a claim for breach of an implied warranty of workmanship.  *See Blackmon v. Powell*, 132 So. 3d 1, 5 (Ala. 2013).  In *Blackmon*, the plaintiff sued for both breach of contract and breach of the implied warranty of workmanship.  The Alabama Supreme Court explained that "technical performance of the contract . . . may survive a pure breach-of-contract action, [but] an action alleging the breach of an implied warranty, such as the implied warranty of workmanship, can overcome this obstacle."  *Id.* (quoting *Turner v. Westhampton Court, LLC*, 903 So. 2d 82, 93 (Ala.2004)).  Because the defendant had "technically fulfilled his obligations under his contract . . . by completing the tasks he was hired to do, regardless of the quality of the plumbing services he provided," the breach of contract claim failed.  *Id.*

5

Here, although MSR and Cedar Lakes allege that Dyno Nobel failed to perform in accordance with "historic operational procedures and industry standards," they do not allege that Dyno Nobel failed to perform any obligation that that it had agreed to perform under the contract. In their briefs, MSR and Cedar Lakes argue that the contract's promise that "other valued employees of [the previous company] will continue to provide the same support and interaction with your operation as before" is just such an obligation. (Doc. 28 at 3; *see* Doc. 24-1 at 1). But "support and interaction" cannot be read as "commercially reasonable" or, in the terminology of the amended counterclaim, "historic operational procedures and industry standards." (*See* Doc. 24 at 6 ¶ 18). Thus, under *Blackmon*, MSR and Cedar Lakes fail to state a claim for breach of contract.

Accordingly, the court **GRANTS** Dyno Nobel's motion with respect to Count One and **WILL DISMISS** the breach of contract claim **WITH PREJUDICE**.

2.  Violations of the FSMCRA and ASMCRA

In Counts Two and Three, MSR and Cedar Lakes assert that Dyno Nobel violated the FSMCRA and the ASMCRA by dumping explosive emulsion containing ammonium and nitrates mixed with diesel fuel on an open spoil of their property. (Doc. 24 at 6–7 ¶¶ 24, 27). Dyno Nobel moves to dismiss these counts on the basis that MSR and Cedar Lakes failed to satisfy the notice provisions set out in the statutes and their implementing regulations. (Doc. 25 at 6–10; Doc. 29 at 5–6).

The FSMCRA and the ASMCRA permit "[a]ny person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit issued pursuant to this chapter [to] bring an action for damages."  30 U.S.C. § 1270(f); *see* Ala. Code § 9-16-95(f) (using almost identical language). Each statute also contains a notice provision.  30 U.S.C. § 1270(b); *see* Ala. Code § 9-16-95(b).  And the Supreme Court has held that compliance with an identical notice provision in a different statute is a "mandatory condition[ ] precedent to commencing suit."  *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 23 n.1, 31 (1989)

As MSR and Cedar Lakes note, although the statutory notice provisions in the FSMCRA and ASMCRA clearly apply to citizen suits for injunctive relief, whether they apply to citizen suits for damages is unclear.  *See* 30 U.S.C. § 1270(b)(1)–(2) (requiring notice and expressly referring to subsection (a), which relates only to lawsuits for injunctive relief); *see* Ala. Code § 9-16-95(b)(1)–(2) (same).  But even if the statutes are unclear, the regulations are not.  The federal regulations clearly provide that "[a] person who intends to initiate a civil action on his or her own behalf under section 520 of the Act [*i.e.*, § 1270] shall give notice of intent to do so, in accordance with this section."  30 C.F.R. § 700.13(a).  The rest of § 700.13 sets out specific requirements to give notice, which includes giving notice to relevant regulatory authorities.  *Id.* § 700.13(b)–(f).  The state regulations mirror the federal regulations.  Ala. Admin. Code § 880-X-2A-.09.

MSR and Cedar Lakes do not argue that the regulations are not binding or that they were not required to give notice compliant with the regulations before filing suit.  Instead, they argue that they satisfied the notice requirement because "Dyno was notified of the need for remedial clean-up."  (Doc. 28 at 5; *see* Doc. 25 at 4 ¶ 13).  But the applicable regulations require much more for valid notice.  30 C.F.R. § 700.13(a); Ala. Admin. Code § 880-X-2A-.09.  For one thing, the regulations require that the person who intends to file suit notify regulatory authorities as well as the alleged violator.  30 C.F.R. § 700.13(b); Ala. Admin. Code § 880-X-2A-.09(2).

MSR and Cedar Lakes do not allege that they notified anyone other than Dyno Nobel about its dumping of explosive emulsion on their property, nor do they allege that their notice to Dyno Nobel satisfied the requirements set out in the regulations. (*See* Doc. 24 at 4).  Accordingly, their allegations, even taken as true, do not establish that they satisfied the notice requirement that is a prerequisite to filing suit.  The court therefore **GRANTS** the motion to dismiss and **WILL DISMISS** Counts Two and Three **WITHOUT PREJUDICE**.

## III.    CONCLUSION

The court **GRANTS** Dyno Nobel's motion to dismiss Counts One, Two, and Three.  The court **WILL DISMISS** Count One **WITH PREJUDICE**.  The court

**WILL DISMISS** Counts Two and Three **WITHOUT PREJUDICE**.  The court

will enter a separate order consistent with this memorandum opinion.

Count Four will proceed.

**DONE** and **ORDERED** this May 8, 2020.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE